WILLMARK SERVICE SYSTEM, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9402. Promulgated November 14, 1927.

*Mark Eisner, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

**OPINION.**

LITTLETON: The petitioner contends that the Commissioner erred in not classifying it as a personal service corporation.

Under section 200 of the Revenue Act of 1918 the requirements of a personal service corporation are as follows, to wit:

1. The income of the corporation must be ascribed primarily to the activities of the principal owners or stockholders.

2. Such principal owners or stockholders must themselves be regularly engaged in the active conduct of the affairs of the corporation.

3. Capital (whether invested or borrowed) must not be a material income-producing factor.

A father and two sons owned all the stock of petitioner. The father owned 20 per cent of the stock and each of the sons 40 per cent. The evidence indicates that all three rendered service to the petitioner; the father and one son being regularly engaged in the

active conduct of the corporate business. The other son rendered service also, but was regularly employed as head of the service department of the United Cigar Stores Co. of New York City. As compensation for services rendered petitioner for the year 1920, the son employed by the United Cigar Stores Co. received $425. The other son received for his services to petitioner for the same period $6,435 and the father as compensation for his services, $5,050.

The subscribers to petitioner's system were the owners of stores in various cities throughout the country and it was absolutely necessary in the conduct of petitioner's business to employ a number of persons to assist in acquiring the necessary information to enable petitioner to render satisfactory service to its subscribers. It is not made clear how many employees in various capacities petitioner engaged, nor just what was paid each, though the secretary of petitioner, in response to inquiries made by the Commissioner, relative to the year 1920, stated:

> No separate classes or accounts were then kept for the entire year, but all our books show is that we paid in salaries and commission to all of the employees, consisting of shoppers, crew managers, stenographers and other office help, including traveling expenses, hotel bills, rents and all other expenses, such as stationery, printing, postage, advertising, etc., $88,368.40, as shown on our income return for that year.

It further appears from the evidence that the entire amount of salaries or compensation received by the stockholders in 1920 was only $11,910.

It also appears that some money was borrowed to advance for buying merchandise in the stores while checking up the sales clerks and for other expenses, such as railroad fares, salaries to employees, daily allowances for hotels and bills and other expenses which could only be paid in cash.

It is true that the crew managers and the shoppers employed by petitioner were all under the instructions and subject to the control of and reported to the officers of petitioner, the result of their investigations, but the evidence is not sufficient to convince the Board that the Commissioner made any error in denying personal service classification to petitioner.

As we said in *Commercial Reference Co.*, 7 B. T. A. 384:

> While the investigators and reporters were subject to the instructions of the officers of the corporation who were stockholders, it can not be said that the income of the petitioner resulting from the services of such investigators and reporters was primarily due to the activities of the stockholders.

*Judgment will be entered for the respondent.*

Considered by SMITH, TRUSSELL, and LOVE.